# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Rector Church Wardens and :
Vestrymen of Trinity Church :
in Oxford Township Philadelphia :
County, :
      Appellant :
          :
    v. : No. 1338 C.D. 2018
         : Argued: June 3, 2019
City of Philadelphia Historical :
Commission and City of Philadelphia :

BEFORE: HONORABLE MARY HANNAH LEAVITT, President Judge
     HONORABLE ROBERT SIMPSON, Judge
     HONORABLE ELLEN CEISLER, Judge

**OPINION**
**BY JUDGE SIMPSON**     **FILED:  JULY 11, 2019**

    Rector Church Wardens and Vestrymen of Trinity Church (Church) (collectively, Owners) appeal from an order of the Philadelphia County Court of Common Pleas (trial court)[1] that affirmed the City of Philadelphia Historical Commission's (Commission) designation of their Parish House as a historic place. Owners argue the trial court erred in deferring to the Commission's construction of its regulations because the Commission disregarded a crucial prerequisite for designation, that the place be significant.  Owners also assert the trial court should have analyzed the Religious Land Use and Institutionalized Persons Act of 2000 (RLUIPA), 42 U.S.C. §§2000cc-2000cc-5, because the designation burdens the Church's religious exercise by creating obstacles to profiting from the property. Upon review, we affirm the trial court's order.

---

[1] The Honorable Paula Patrick presided.

## I. Background

Parish House, located at 6901 Rising Sun Avenue, is on the western side of the same parcel as the Church (previously designated as historic)[2] in Philadelphia. Parish House, also referred to as School House, was constructed in two phases in 1928 and 1963. Its construction in 1928 followed the City's Sesquicentennial celebration featuring the Colonial Revival architecture style. The first phase featured an auditorium and gymnasium. The addition in the second phase added a larger classroom wing following the same Colonial Revival style.

Features of the Colonial Revival style reflected in Parish House include: a Doric portico entrance and porch; a tabernacle window; double doors; and a 1928 date stone and "bulls-eye" window above the entrance. Reproduced Record (R.R.) at 63a, 219a-20a, 258a. The expansion added a gable roof and an octagonal cupola also reflective of the Colonial Revival style. R.R. at 217a-19a, 222a.

Owners leased the space at Parish House for various secular uses including classes, community meetings and activities. Notably, <u>Parish House has not been used for religious services</u>. R.R. at 227a-29a. The gym in Parish House was leased to the Philadelphia Police Athletic League from 1969-2015, and other portions were leased to a child care center from 1978-2015. Owners stopped leasing Parish House in 2015.

In April 2017, the Preservation Alliance for Greater Philadelphia (the Alliance) nominated Parish House for designation on the Philadelphia register of

---

[2] There is no dispute that the Church is a historic place and its designation is not at issue.

historic places (Register). The nomination proposed that Parish House met three of the 10 criteria in the Preservation Ordinance, Phila. Code, §14-1004(1), specifically, (c), (d) and (j). Criterion (c) requires the building to reflect an era characterized by a distinctive architectural style, here Colonial Revival popular in the 1920s. Criterion (d) requires a building to embody distinguishing characteristics of an architectural style. Criterion (j) allows designation of places that exemplify cultural or social heritage of the community.

In September 2017, the Committee on Historic Designation, (which reports to the Commission), met to consider the nomination. The five-person Designation Committee included two architectural historians, an archaeologist and a registered architect.

During the Designation Committee meeting, the Alliance, local politicians and members of the community presented their views on the architectural and historic importance of Parish House itself and as an integral part of the community. Owners opposed the designation as they were in negotiations to enter a binding lease or sale with Royal Farms to build a gas station/convenience store. The financial hardship alleged is that Parish House could not be altered or demolished once on the Registry.

The Designation Committee discussed the comments and considered the arguments. It then voted to recommend to the Commission that Parish House met the criteria for designation on the Register.

In November 2017, the Commission held a public meeting where it considered the nomination. Community members and leaders supported the designation. Over 3,000 community members signed a petition supporting the designation. R.R. at 55a-62a. The Commission also heard Owners' objections. Owners emphasized the Church's financial difficulties and the necessity of obtaining revenue from Parish House. They provided a preliminary economic analysis of their finances, including the annual cost of maintaining Parish House of $30,000-$36,000. Owners planned to allow a commercial tenant to demolish Parish House and repurpose the property as a convenience store. Owners maintained a lease or sale of Parish House was necessary for the Church's survival as it was its only secular asset.

After emphasizing its role in acting on the nomination, and not in deciding a financial hardship application, the Commission concluded Parish House met the three designation criteria as the Designation Committee recommended.[3] On November 29, 2017, the Commission issued its official notice of designation. R.R. at 5a-6a. Owners appealed the Commission's decision to the trial court.

Based on the record before the Commission, the trial court upheld the designation. Owners then appealed the trial court's order to this Court.

The trial court directed Owners to file a Rule 1925(b) Statement of errors complained of on appeal. After receiving the Statement, it then filed an opinion supporting its order. See Tr. Ct., Slip Op., 10/2/18. It deferred to the Commission's construction of the Preservation Ordinance and its application of the

---

[3] There is a separate financial hardship process under Commission regulations.

4

designation criteria to Parish House. The trial court cited the evidence presented at the Commission's meeting. It also concluded that RLUIPA did not apply because there was no indication on the record that Parish House was used for any religious purpose or that the designation impaired any religious exercise.

After briefing[4] and argument the matter is ready for disposition.

## II. Discussion

On appeal,[5] Owners argue the trial court erred in applying an abuse of discretion standard to the Commission's decision. Primarily, they assert the trial court overlooked an overarching significance criterion in the Preservation Ordinance. They contend the designation criteria are ambiguous, requiring the Commission to consider the significance of Parish House. Owners also claim substantial evidence does not support the designation. In addition, they assign error in that the trial court concluded RLUIPA did not apply to preclude designation, an alleged burden on the Church's religious exercise.

The City responds that Parish House meets designation criteria because it reflects the Colonial Revival style and has historically been a center for community activities. It counters that the Commission's meeting minutes and the records it considered constitute sufficient evidence in support of the Commission's decision.

---

[4] Owners and the City on behalf of the Commission filed briefs. The Alliance was precluded from filing a brief.

[5] "An administrative agency's interpretation of [a rule] it is charged to administer is entitled to deference on appellate review absent 'fraud, bad faith, abuse of discretion, or clearly arbitrary action.'" Turchi v. Phila. Bd. of License & Inspection Review, 20 A.3d 586, 591 (Pa. Cmwlth. 2011) (quoting Winslow–Quattlebaum v. Maryland Ins. Grp., 752 A.2d 878, 881 (Pa. 2000)).

Chapter 14-1000 of the Philadelphia Code, pertaining to Historic Preservation, serves as the City's Preservation Ordinance. As a matter of policy, it recognizes the importance of preserving buildings of "historic, architectural, cultural, educational and aesthetic merit" and preserving buildings important to the education, culture, traditions and economic values of the city. Phila. Code, §14-1001 (Public Policy and Purposes). To that end, the Code empowers the Commission to render decisions on historic preservation, including designation of buildings for the Register. See Turchi v. Phila. Bd. of License & Inspection Review, 20 A.3d 586, 590 (Pa. Cmwlth. 2011) (Turchi I).

The Commission designated Parish House for the Register based on the criteria contained in the Preservation Ordinance. We consider the Commission's interpretation of the Preservation Ordinance. We also examine whether the record supports the Commission's application of the criteria to Parish House.

## A. Deference to Commission

First, we consider Owners' argument that the Commission erred in construing and applying the Preservation Ordinance. Specifically, they assert the Commission ignored the "threshold standard for designation: It is not 'significant to the City' as required by Section 14-1003(2)(a) of the Preservation Ordinance." Appellants' Br. at 16.

Throughout their briefs, Owners maintain that the Philadelphia Code, §14-1001(1), contains criteria requiring significant attributes. In particular, they claim Section 14-1003(2)(a) contains a significance requirement.

6

Section 14-1003(2) lists the Commission's powers and duties "shall be as follows: […] (b) designate as historic those buildings, structures, sites and objects <u>the [Commission] determines are significant to the City</u>, pursuant to the criteria of Section 14-1004(1)." Phila. Code, §14-1003(2) (emphasis added). In context, it is clear the Commission has the discretion to determine what is significant, guided by the criteria in Section 14-1004(1). In pertinent part, Section 14-1004(1) provides:

> A building [or] complex of buildings … may be designated for preservation if it:
>
> ****
>
> (c) Reflects the environment in an era characterized by a distinctive architectural style.
>
> (d) Embodies distinguishing characteristics of an architectural style or engineering specimen.
>
> ****
>
> (j) Exemplifies the cultural, political, economic, social, or historical heritage of the community.

Phila. Code, §14-1004(1) (Preservation Ordinance). Only one criterion must be met. Here, the Commission concluded Parish House met three different criteria for nomination. As a result, it designated Parish House and placed it on the Register.

In <u>Turchi I</u>, we recognized the Commission has expertise given its mandated composition of specialists in historical, architectural, and real estate fields. This Court held that given the Commission's expertise, its ability to promulgate regulations, and its authority to administer the Preservation Ordinance, "the [Commission's] reasonable interpretations of the ... Ordinance are entitled to

deference and that these interpretations 'become[ ] of controlling weight unless [they are] plainly erroneous or inconsistent' with the ... Ordinance." Id. at 594.

We reasoned that "the administrative interpretation and [c]onstruction of [phrases] are matters within the province of the [Commission's] administrative expertise." Id. at 595 (citation omitted); see also Turchi v. Phila. Bd. of License & Inspection Review (Pa. Cmwlth., No. 658 C.D. 2014, filed May 15, 2015), 2015 WL 5437160 (unreported) (Turchi II). As such, the Commission's construction of the Preservation Ordinance and the designation criteria are entitled to deference.

Applying a deferential standard here, we uphold the Commission's designation of Parish House as a historic place. The Commission's construction of the criteria is reasonable.

Because the Commission has the discretion to designate what qualifies as historically significant using the designation criteria, we discern no merit in Owners' contention that the Commission disregarded a significance requirement. Even presuming such an overarching significance requirement exists, the Commission has the express authority to determine what qualifies as significant. Meyer v. City of Pittsburgh Historic Review Comm'n, 201 A.3d 929 (Pa. Cmwlth. 2019).

### B. Substantial Evidence

Next, Owners contend the record does not contain substantial evidence to support the Commission's application of the nomination criteria to Parish House. This Court recognizes that minutes of Commission meetings are evidence and may

8

support a designation. See id. (applying Pittsburgh Zoning Code; deferring to historic commission); see, e.g., Woodland Terrace Homeowners' Ass'n v. Phila. Bd. of License & Inspection Review (Pa. Cmwlth., No. 801 C.D. 2014, filed April 22, 2015), 2015 WL 5436758 (unreported) (upheld Commission grant of financial hardship application to demolish historic building).

The Commission met on November 10, 2017, accepting statements and documents in support of the designation. Owners submitted documents, including a preliminary economic analysis, supporting their objections and financial concerns. Community members and nominators spoke in support of the designation.

In support of Criterion (j), the minutes of that meeting reflect that over 3,000 members of the community support the designation based on the cultural import of Parish House to the community. R.R. at 54a-56a. Also, in support of Criteria (c) and (d), the minutes explain how Parish House exhibits Colonial Revival architecture. Specifically, that Parish House was unique in embracing the Colonial Revival style following the Sesquicentennial, was one of the oldest in northeast Philadelphia, a striking building in the neighborhood. R.R. at 58a. Parish House has a Doric portico with double doors, a tabernacle window with a segmental arch, a date stone and a bulls-eye window. R.R. at 63a.

Primarily, Owners assert Parish House is merely an ordinary example of Colonial Revival style architecture. They allude to the existence of many other examples of that style that would be better, more worthy examples. However, that there are other examples of the Colonial Revival style of architecture does not

9

diminish the necessity for preserving Parish House. An ordinary or representative building constructed in the Colonial Revival style still reflects the era and a distinctive type of architecture as Criteria (c) and (d) prescribe.

It bears emphasis that only one criterion must be met for designation. Here, most of the evidence relates to Criterion (j), and the role Parish House played in the history and culture of the community. However, it is undisputed that Parish House contains specific architectural elements of the Colonial Revival style, which the Commission deemed sufficient for designation under Criteria (c) and (d). The record supported the Commission's application of the criteria here.

## C. Effect of Designation

Owners also contend the Commission's designation decision adversely affects their ability to use their property as they wish. They assert the trial court should have construed any ambiguity in the Preservation Ordinance in their favor as landowners because designation constitutes a land use restriction. They also assign error to the trial court's conclusion that the designation is not a restriction on land use when historic designation subjects owners to additional requirements and limits their use or modification of the property. In addition, Owners maintain the trial court erred in disregarding the impact designation had on their ability to profit from Parish House.

## 1. Zoning Code

Owners contend that the Commission ignored the rules of construction in the Philadelphia Zoning Code. In support, Owners cite the "Rules of Interpretation" of the Zoning Code, which states how words in the Zoning Code shall be construed.

10

Phila. Code, §14-201. Specifically, it provides: "Where the meaning of a restriction in this Zoning Code is ambiguous and the intent cannot be discerned through the usual rules of statutory construction, the restriction shall be construed in favor of the landowner." Id. (emphasis added).

Despite that the effect of the designation decision restricts Owners' land use, it does not constitute a "restriction" as that term is used in Section 14-201. Id. In so construing this provision, Owners disregard its plain language.

While the *criteria* for designation are enumerated in the Preservation Ordinance, (Chapter 14-1000 of the Zoning Code), the designation follows a decision to designate by the Commission. Thus, the designation itself does not consist of ambiguous terms "in the Zoning Code" that may be construed in a landowner's favor. Id. Thus, we agree with the trial court that Section 14-201 does not apply to the Commission's designation of Parish House.

Further, the Zoning Code expressly delegates authority to the Commission to make designation decisions. See Phila. Code, §14-1003. Accordingly, we do not disturb the Commission's interpretation of the Preservation Ordinance absent "fraud, bad faith, abuse of discretion, or clearly arbitrary action." Winslow-Quattlebaum v. Maryland Ins. Grp., 752 A.2d 878, 881 (Pa. 2000).

## 2. RLUIPA

Lastly, we consider Owners' argument that the designation imposes a substantial burden on religious exercise that is prohibited by RLUIPA.

11

RLUIPA provides in pertinent part:

> No government shall impose or implement a land use regulation in a manner that imposes a substantial burden on the religious exercise of a person, including a religious assembly or institution ….

42 U.S.C. §2000cc(a)(1). Here, Owners contend the designation of Parish House under the Preservation Ordinance is a land use regulation that poses a substantial burden in that it limits their ability to sell/modify Parish House. Once designated, Owners would need to seek a financial hardship exemption to modify Parish House.

Assuming that RLUIPA applies, the next question is whether the sale of Parish House constitutes a "religious exercise." The burden is on petitioner to prove that the commercial transaction, i.e., the sale or lease of Parish House by the Church, constitutes a "religious exercise." 42 U.S.C. §2000cc–2(b).

RLUIPA defines "religious exercise" as "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. §2000cc–5(7)(A). RLUIPA specifically provides that "[t]he use, building, or conversion of real property for the purpose of religious exercise shall be considered to be religious exercise of the person or entity that uses or intends to use the property for that purpose." 42 U.S.C. §2000cc–5(7)(B).

In determining whether an activity qualifies as a religious exercise, this Court considers whether the activities "are administered by a religious leader, i.e., a minister, priest, rabbi or other spiritual leader." Glenside Ctr., Inc. v. Abington Twp. Zoning Hearing Bd., 973 A.2d 10, 17 (Pa. Cmwlth. 2009). It is also relevant that

Parish House does "not hold any religious services or have any religious affiliations." Id.

Here, Owners cannot avail themselves of the protections of RLUIPA without showing an impairment of religious exercise. However, Owners did not submit any evidence to show that the designation impaired a religious exercise. The record is clear that Parish House was not used for religious activities and the Church used it as a source of funds.

Relevant here, a "religious exercise" is not the equivalent of any exercise by a religious body. The sale or lease of *secular* property owned by a church is not a religious exercise. California–Nevada Annual Conf. of Methodist Church v. City & Cty. of San Francisco, 74 F. Supp. 3d 1144, 1154 (N.D. Cal. 2014). Sale of property only used for secular purposes is not a religious exercise even if the profits from the sale will go toward furthering a religious mission. Id.

Moreover, a land use regulation that makes it more expensive or difficult to practice religion is not a substantial burden. Braunfeld v. Brown, 366 U.S. 599 (1961); Lakewood, Oh. Congreg'n of Jehovah's Witnesses, Inc. v. City of Lakewood, Oh., 699 F.2d 303 (6th Cir. 1983); Episcopal Student Found. v. City of Ann Arbor, 341 F. Supp. 2d 691 (E.D. Mich. 2004).

RLUIPA's statutory language and relevant case law establish that commercial endeavors such as that here– the sale or lease of property previously used for only secular activities– do not constitute "religious exercise" protected by

13

RLUIPA.[6] Accordingly, the trial court did not err in concluding that RLUIPA did not apply so as to preclude the Commission's designation of Parish House.

In sum, this Court defers to the Commission's interpretation and application of the nomination criteria in the Preservation Ordinance. The trial court did not err in concluding that RLUIPA did not apply. Regardless, Owners bore the initial burden to demonstrate the commercial transaction that the Church contemplated qualified as a "religious exercise" so as to trigger the statute's application.

### III. Conclusion

For the foregoing reasons, the trial court's order is affirmed.

_____
ROBERT SIMPSON, Judge

Judge Fizzano Cannon did not participate in the decision of this case.

---

[6] Because we agree with the trial court's conclusion that RLUIPA does not apply, it is not necessary to analyze the designation under a strict scrutiny standard (i.e., whether the City proved a compelling governmental interest in the designation and used the least restrictive means of furthering that interest).

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Rector Church Wardens and :
Vestrymen of Trinity Church :
in Oxford Township Philadelphia :
County, :
                       Appellant :
                             :
            v. : No. 1338 C.D. 2018
                             :
City of Philadelphia Historical :
Commission and City of Philadelphia :

# **O R D E R**

      **AND NOW**, this 11th day of July, 2019, the order of the Court of Common Pleas of Philadelphia County is **AFFIRMED**.


                              _____
                              ROBERT SIMPSON, Judge