IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In re: Appeal of Cresheim Valley    :
Realty Company LP    :
   :
Appeal of: Cresheim Valley    :    No. 137 C.D. 2024
Realty Company LP    :    Submitted: February 3, 2026


BEFORE:    HONORABLE ANNE E. COVEY, Judge
               HONORABLE STACY WALLACE, Judge
               HONORABLE MATTHEW S. WOLF, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE COVEY                        FILED: March 12, 2026


       Cresheim Valley Realty Company LP (Cresheim Valley) appeals from the Philadelphia County Common Pleas Court's (trial court) January 16, 2024 order (entered January 17, 2024)[1] affirming the Philadelphia Historical Commission's (Commission) April 10, 2023 decision designating Cresheim Valley's property located at 7200 Cresheim Road, Philadelphia (City), Pennsylvania (Property) as historic (Designation) and adding it to the City's Register of Historic Places (Register). Cresheim Valley presents three issues for this Court's review: (1) whether the trial court erred or abused its discretion by affirming the Commission's Designation because it will create an incurable default event under Cresheim Valley's mortgage agreement; (2) whether the Designation violated Cresheim Valley's due process rights; and (3) whether substantial record evidence supports the Commission's determination that the Property satisfied the criteria set forth in

---

[1] The Commission sought judgment, which the trial court entered on February 14, 2024. Cresheim Valley timely appealed to this Court on February 15, 2024.

former Section 14-1004 of the Philadelphia Code (Preservation Ordinance) for designation as a historical building.[2]  After review, this Court affirms.

Cresheim Valley owns the Property.  SBG Management Services, Inc. (SBG) owns Cresheim Valley.  Phillip Pulley (Pulley) is SBG's principal.  On October 18, 2022, the Commission received a Nomination of a Historic Building, Structure, Site, or Object (Nomination), which Cynthia Dutwin (Dutwin) compiled on behalf of the West Mount Airy Neighbors Association (Association), recommending that the Commission designate the Property as historical.[3]  The Nomination averred:

> The historic resource satisfies the following criteria for designation . . . :
>
> . . . .
>
> (c) Reflects the environment in an era characterized by a distinctive architectural style; or,
>
> . . . .
>
> (g) Is part of or related to a square, park[,] or other distinctive area which should be preserved according to an historic, cultural[,] or architectural motif; or,
>
> . . . .
>
> (j) Exemplifies the cultural, political, economic, social[,] or historical heritage of the community.

Reproduced Record (R.R.) at 25.

---

[2] *Former* Phila. Code § 14-1004 (2023).  This is the Preservation Ordinance that was in effect at the time of the Designation.

[3] *See* Reproduced Record at 24-46.  Cresheim Valley did not number the pages of the Reproduced Record with a small "a" as required by Pennsylvania Rule of Appellate Procedure 2173. *See* Pa.R.A.P. 2173 (providing "the pages of . . . the reproduced record . . . shall be numbered separately in Arabic figures . . . : thus 1, 2, 3, etc., followed . . . by a small a, thus 1a, 2a, 3a, etc. . . .").  This Court's references to the page numbers herein are consistent with Cresheim Valley's Reproduced Record.

On December 15, 2022, the Commission informed Cresheim Valley of its receipt of the Nomination. By January 16, 2023 letter, Pulley notified the Commission: "[T]he [P]roperty doesn't have enough income to support the historical designation or compliance. In addition, [Cresheim Valley is] precluded from allowing this building to have a historical designation as it would result in a default under [its] mortgage." R.R. at 55. On January 18, 2023, the Commission's Committee for Historical Designation (Committee) conducted a hearing regarding the Nomination. Neither Pulley nor any other person appeared at the hearing on Cresheim Valley's behalf. Following the conclusion of the hearing, the Committee unanimously recommended that the Property satisfied the criteria for designation under former Section 14-1004(1)(c) and (j) of the Preservation Ordinance. The Commission notified Cresheim Valley of the recommendation.

By February 6, 2023 letter to the Commission, Michael Yanoff, Esquire (Attorney Yanoff), Cresheim Valley's counsel, objected to the proposed Designation, and reiterated the concern that the Designation would violate the terms of Cresheim Valley's mortgage, and that SBG lacked sufficient supporting rental income from the apartment building on the Property. *See* R.R. at 97. By March 7, 2023 letter to the Commission, Attorney Yanoff, again opposed the Property's proposed Designation, and again alleged that the Designation would encumber the Property in violation of Cresheim Valley's mortgage.[4] *See* R.R. at 159-160.

On March 10, 2023, the Commission held a public meeting to review and decide on the Property's Nomination. The Commission considered the mortgage default claim and determined that the cited boilerplate language in the standard mortgage loan would not hinder the Designation. Pulley and Samantha

---

[4] Attorney Yanoff enclosed Cresheim Valley's (1) Loan Agreement (No encumbrance provisions), *see* R.R. at 162-167; (2) Schedule 1 (Permitted Encumbrances definitions), *see* R.R. at 168-169; and (3) Security Instrument (Permitted Encumbrances definition). *See* R.R. at 171.

3

Pulley, Esquire (Attorney Pulley), attended the Commission meeting.[5]  Upon full review of all information and after perceiving no substantive challenge to the validity or appropriateness of the Nomination, the Commission voted unanimously at the end of the March 10, 2023 meeting to designate the Property as historic and list it on the Register.  The Commission concluded that the Property had satisfied the criteria for designation under former Section 14-1004(1)(c) and (g) of the Preservation Ordinance.

Cresheim Valley appealed to the trial court.  By January 16, 2024 order (entered January 17, 2024), the trial court affirmed the Commission's decision. Cresheim Valley appealed to this Court.[6]  On February 23, 2024, the trial court directed Cresheim Valley to file a Concise Statement of Errors Complained of on Appeal pursuant to Pennsylvania Rule of Appellate Procedure (Rule) 1925(b) (Rule 1925(b) Statement).  Cresheim Valley filed its Rule 1925(b) Statement on March 13, 2024.  On November 6, 2024, the trial court filed its opinion.

Preliminarily,

the Commission has expertise given its mandated composition of specialists in historical, architectural, and real estate fields.  This Court held that given the Commission's expertise, its ability to promulgate regulations, and its authority to administer the Preservation Ordinance, "the [Commission's] reasonable interpretations of the . . . [Preservation] Ordinance are entitled to deference and that these interpretations 'become[ ] of controlling weight unless [they are] plainly

---

[5] Only Attorney Yanoff entered his appearance in this matter.  However, Attorney Pulley appeared in person for Cresheim Valley and authored its brief.

[6] This Court's "review in an appeal of a local agency decision, where the trial court has taken no additional evidence, is whether constitutional rights have been violated, whether an error of law has been committed, or whether a finding of fact of the agency necessary to support its adjudication is not supported by substantial evidence." *Meyer v. City of Pittsburgh Hist. Rev. Comm'n*, 201 A.3d 929, 935 n.6 (Pa. Cmwlth. 2019).

erroneous or inconsistent' with the . . . [Preservation] Ordinance." [*Turchi v. Phila. Bd. of License & Inspection Rev.*, 20 A.3d 586, 594 (Pa. Cmwlth. 2011)].

*Rector Church Wardens v. City of Phila. Hist. Comm'n*, 215 A.3d 1038, 1042 (Pa. Cmwlth. 2019).

Cresheim Valley first argues that the trial court erred or abused its discretion by affirming the Commission's Designation because it will create an incurable default event under the Property's mortgage agreement and, thus, deprive Cresheim Valley of the Property's economic value. Specifically, Cresheim Valley contends that the Designation will cause a default under Section 1401(c)(1) of the Multifamily Loan and Security Agreement. The City rejoins that the Commission and the trial court carefully considered these claims and simply found them to be without any foundation. The City counters that a designation does not constitute an encumbrance and, even if it did, that would not preclude the Commission from designating a property.

Initially, Section 11.02 of the Multifamily Loan and Security Agreement provides, in relevant part:

> **(a) Liens; Encumbrances.**
>
> [**Cresheim Valley**] **shall not permit** the grant, creation, or existence of **any** [**l**]**ien**, whether voluntary, involuntary, or by operation of law, **on all or any portion of the** [] **Property** (including any voluntary, elective, or non-compulsory tax lien or assessment pursuant to a voluntary, elective, or non-compulsory special tax district or similar regime) other than:
>
> > (1) Permitted Encumbrances;
> >
> > (2) the creation of:
> >
> > > (A) any tax lien, municipal lien, utility lien, mechanics' lien, materialmen's lien, or judgment lien against the [] Property if bonded off, released of record, or otherwise remedied to Lender's

5

satisfaction within sixty (60) days after the earlier of the date [Cresheim Valley] has actual notice or constructive notice of the existence of such lien; or

(B) any mechanics' or materialmen's liens which attach automatically under the laws of any [g]overnmental [a]uthority upon the commencement of any work upon, or delivery of any materials to, the [] Property and for which [Cresheim Valley] is not delinquent in the payment for any such work or materials; and

(3) the lien created by the Loan Documents.

R.R. at 162-163 (text emphasis added). Section 1401(c) of the Multifamily Loan and Security Agreement provides: "**Events of Default Subject to Extended Cure Period**[:] . . . . (1) any failure by [Cresheim Valley] to perform any of its obligations under this Loan Agreement or any Loan Document . . . as and when required[.]" R.R. at 166.

According to the minutes from the January 18, 2023 Committee hearing, Committee Chair Emily Cooperman (Cooperman) explained:

[T]he Committee received a letter of opposition from the attorney for [Cresheim Valley], and lamented the fact that [] Pulley was not in attendance at the meeting. [Cooperman] noted that [Pulley's] letter, which is in the public record, states that a designation would cause [Pulley] to default on his mortgage. [Cooperman] commented that she has never experienced anything of that sort in terms of designation, and would like to understand more about that assertion, but in the absence of [Cresheim Valley's] representative, is not comfortable commenting on it. [Cooperman] noted that the Commission will have the opportunity to determine whether it is in the public interest to designate or not designate for whatever reason.

[The Commission's Executive Director Johnathan E. Farnham, Ph.D.] responded that he is unaware of any designation resulting in a default on a mortgage in his 20 years at the [] Commission.

6

R.R. at 83-84.

According to the minutes from its March 10, 2023 meeting, the Commission made the following findings:

• The [] Commission's attorney reviewed the mortgage documents submitted by [Cresheim Valley] and found that the language about encumbrances is fairly standard boiler-plate language present in most mortgages.

• Local designation does not constitute an encumbrance. Encumbrances are interests in [a] property, such as easements, leases, or ground rents, which local designation does not create. Local designation is akin to a zoning change, which would not constitute an encumbrance.

• [Cresheim Valley's] assertion that [its] mortgage company requires the owners to hire various consultants to respond to the Nomination seems like a misunderstanding and is likely conflating local designation with National Register designation or a façade easement, both of which are separate and different processes. National Register designation is often a prerequisite for historic preservation tax credits and requires owner consent as well as extensive documentation by a preservation consultant.

• [Cresheim Valley] can speak directly with the [] Commission's staff to understand the implications of [D]esignation without hiring a consultant.

• The [P]roperty's mortgage language does not impact or bind the [] Commission's decision making.

R.R. at 249. Given that neither Pulley, Attorney Pulley, Attorney Yanoff, nor any other person appeared to represent Cresheim Valley at the January 18, 2023 Committee hearing to present evidence that its lender considers a designation an encumbrance constituting a mortgage default, and there is nothing in the former Preservation Ordinance or the Commission's Rules and Regulations suggesting that the Property's mortgage language impacts or binds the Commission, this Court

7

cannot conclude that the trial court erred or abused its discretion by affirming the Commission's Designation based on the Property's mortgage agreement.

Cresheim Valley next argues that the Designation violated Cresheim Valley's due process rights by denying it a meaningful opportunity to be heard prior to imposing the Designation. The City rejoins that because Cresheim Valley did not raise a due process deprivation claim below, it failed to preserve it and, thus, waived it. The City further retorts that even if Cresheim Valley preserved a due process claim, the designation of a property over an owner's objections does not constitute a due process violation.

Preliminarily, "[i]t is without question that the right to a due process hearing, like most constitutional rights, can be waived." *Germantown Cab Co. v. Phila. Parking Auth.*, 134 A.3d 1115, 1120 n.7 (Pa. Cmwlth. 2016) (quoting *Pa. Bankers Ass'n v. Pa. Dep't of Banking*, 962 A.2d 609, 622 (Pa. 2008)). Further, "[i]ssues not raised in the trial court are waived and cannot be raised on appeal." *Riccio v. Newtown Twp. Zoning Hearing Bd.*, 308 A.3d 928, 940 (Pa. Cmwlth. 2024). Here, Cresheim Valley did not raise its due process claim during oral argument or in its brief before the trial court. Indeed, Cresheim Valley raised that argument for the first time in its Rule 1925(b) Statement.

The Pennsylvania Supreme Court has declared:

> [A] Rule 1925(b) [S]tatement cannot resurrect an otherwise untimely claim or objection. Because issues not raised in the lower court are waived and cannot be raised for the first time on appeal, a [Rule] 1925(b) [S]tatement can therefore never be used to raise a claim in the first instance. Pa.R.A.P. 302. Pennsylvania law is clear that claims and objections that are not timely made are waived.

*Steiner v. Markel*, 968 A.2d 1253, 1257 (Pa. 2009) (citations and footnote omitted).

Accordingly, Cresheim Valley waived its due process claim.[7]

Cresheim Valley next argues that substantial record evidence does not support the Commission's determination that the Property satisfied the criteria set forth in former Section 14-1004 of the Preservation Ordinance for designation as a historical building.  The City rejoins that  substantial evidence in the record supports the Designation of the Property under former Section 14-1004(1)(c) and (j) of the Preservation Ordinance.

Former Section 14-1004 of the Preservation Ordinance provides, in relevant part:

> (1)  **Criteria for Designation.**
>
> A building, complex of buildings, structure, site, object, or district may be designated for preservation if it:
>
> . . . .
>
> (c) Reflects the environment in an era characterized by a distinctive architectural style; [or]
>
> . . . .
>
> (j) Exemplifies the cultural, political, economic, social, or historical heritage of the community.

*Former* Phila. Code § 14-1004 (2023).[8]

According to the minutes from the January 18, 2023 Committee hearing on the Nomination:

> • [Nominator] Dutwin noted that there is significant support for the [N]omination from the residents of the apartment building.  She opined that the architecture

---

[7] Notwithstanding, this Court agrees with the City that a Designation over an owner's objection does not constitute a due process violation.  Here, although Cresheim Valley wrote letters declining the Nomination/Designation and its reasons therefor, it did not appear at the Committee meeting on the Nomination after being notified thereof.

[8] *See* https://www.phila.gov/media/20240611102556/historic-preservation-ordinance-Nov-16-2023.pdf (last visited March 11, 2026).

complements the surrounding homes and is a cherished landmark in the neighborhood.

• [Committee Member Debbie] Miller noted that she is a resident of Northwest Philadelphia and is familiar with this building and others that are similar across that portion of the [C]ity. She commented that this and similar buildings are prominent elements of the landscape in the West Mount Airy neighborhood and noted that the style is used throughout the immediate neighborhood and the broader Northwest Philadelphia.

. . . .

• [Committee Member Suzanna] Barucco supported the [N]omination. She noted that she lives along the Main Line, and that it is fascinating to see the quality of architecture and apartment buildings built around railroad stations. She opined that [the Property] [is] a great example in the Tudor style. She lamented the loss of the brick patio area in front of the building but opined that it does not detract from the character of the building, which still expresses its architectural significance.

• [] Cooperman commented that the [N]omination explains an interesting pattern of development that characterized the area, which was a notable contrast to the pattern of development pursued by the Houstons and Woodwards in the Northwest.[9] She noted she could only think of one apartment building built by Samuel Houston. She explained that apartment buildings such as this one, which are largely Tudor in style or occasionally Colonial Revival, are a considerable component of the character of the Northwest section of Philadelphia and its subsequent development. She noted that she has experienced this building over her lifetime and remarked on how well it fits

---

9    In [Mount] Airy during the late 19th and early 20th centur[ies,] developers such as Herman Wendel and Walter Bassett Smith, **Henry Houston**, and **George Woodward** were building homes to accommodate the **suburban living style newly created** by the development and expansion of the Philadelphia, Germantown[, and] Norristown Railroad away from the urban center.

R.R. at 34 (Nomination) (emphasis added).

10

into the streetscape and forms the streetscape around the Allen Lane station.

R.R. at 83.

The minutes from the January 18, 2023 Committee hearing also reflected the following public comments:

• David Traub [(Traub)] of Save Our Sites supported the [N]omination. He noted that the building is large but is broken into more residential segments with three separate entries. He commented that the square bays at the fourth floor capped with gables gives the building a home-like feel and opined that the [P]roperty deserves designation.

• Sherman Aronson, an architect and resident of West Mount Airy, commented that he is impressed by the building, its history, and design. He noted that the design breaks the large form into smaller forms that are in keeping with the neighborhood and remarked on the Tudor Revival style and Neo-classical entries as consistent with the surrounding area. He noted that the [P]roperty is representative of a period of development in the [C]ity in which the railroad and economic factors allowed people to move to areas outside the [C]ity['s] center but to get there easily by train. Apartments such as this one provided, and still provide, affordable housing.

• Steven Peitzman [(Peitzman)] supported the [N]omination, and designation of similar apartment buildings more generally, noting that there is a wonderful cluster near the Queen Lane station as well. He commented that, although Philadelphia is often thought of as a city of homes, there are also important apartment buildings throughout the [C]ity.

• [The Architectural Historian of the Keeping Society of Philadelphia,] Oscar Beisert[,] supported the [N]omination.

R.R. at 84.

11

Also according to the minutes from the January 18, 2023 Committee hearing, the Committee found that "[the Property] w[as] constructed in 1914[,]" and concluded, in pertinent part:

> • The [P]roperty reflects the environment in an era characterized by the Tudor Revival style as applied to low-rise apartment buildings, satisfying [c]riterion [1][c] [of the Preservation Ordinance].
>
> • The [P]roperty exemplifies the railroad-led economic and historic transformation of Northwest Philadelphia in the early decades of the [20th] century, satisfying [c]riterion [1][j] [of the Preservation Ordinance].

*Id*. Based thereon, the Committee "voted to recommend that the [N]omination demonstrates that the [P]roperty . . . satisfies Criteria for Designation [1][c] and [j] [of the former Preservation Ordinance] and should be designated as historic and listed on the [Register]." *Id*.

According to the minutes from the March 10, 2023 Commission meeting:

> • [Linda] DiPasquale presented the [N]omination to the [] Commission.
>
> • [] Dutwin of [the Association] represented the [N]omination.
>
> • Attorney [] Pulley and [] Pulley represented [Cresheim Valley] and opposed the [D]esignation, arguing that the [D]esignation would constitute an encumbrance and violate their mortgage agreement.
>
> . . . .
>
> • [] Traub of Save Our Sites supported the [N]omination.
>
> • [] Peitzman supported the [N]omination.
>
> • Neighbor Adrienne Carpenter supported the [N]omination.

12

R.R. at 249.

> The Commission concluded, in relevant part:
>
> • The [P]roperty reflects the environment in an era characterized by the Tudor Revival style as applied to low-rise apartment buildings, satisfying [c]riterion [1][c] [of the former Preservation Ordinance].
>
> • The [P]roperty exemplifies the railroad-led economic and historic transformation of Northwest Philadelphia in the early decades of the twentieth century, satisfying [c]riterion [1][j] [of the former Preservation Ordinance].

*Id.* Based on the above, substantial record evidence supports the Commission's determination that the Property satisfied the criteria in former Section 14-1004(1)(c) and (j) of the Preservation Ordinance.

"Applying a deferential standard here, [as required, this Court] uphold[s] the Commission's [D]esignation of [the Property] as a historic place." *Rector Church Wardens*, 215 A.3d at 1043. Accordingly, the trial court's order is affirmed.

_____
ANNE E. COVEY, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In re: Appeal of Cresheim Valley     :
Realty Company LP           :
                                 :
Appeal of: Cresheim Valley      :   No. 137 C.D. 2024
Realty Company LP           :

## O R D E R

AND NOW, this 12th day of March, 2026, the Philadelphia County Common Pleas Court's January 16, 2024 order (entered January 17, 2024) is affirmed.

_____
ANNE E. COVEY, Judge